**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:02CR150-4-V**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.              )<br>)<br>MICKEY DESHAUN SMITH,       )<br>)<br>Defendant.       ) | <u>**MEMORANDUM AND ORDER**</u> |

_____

**THIS MATTER** is before the Court for a determination of competency following the Defendant's second evaluation at FCI Butner and his ongoing evaluation by his own court-appointed expert psychologist, Stephen B. Bondy, Ph.D. A competency hearing was conducted by the undersigned on Thursday, May 26, 2005. Thus, this matter is now ripe for resolution.

### I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This case is older than most, largely due to severe brain damage suffered by the Defendant in an automobile accident about two-and-a-half months <u>after</u> he was indicted. As noted above, the Defendant has been evaluated and treated at FCI Butner twice and on an ongoing basis by his own expert, Dr. Stephen B. Bondy. The relevant facts and dates are as follows.

On May 7, 2002, the Defendant was indicted for conspiring to bring cocaine from Jamaica to the United States and with possessing the subject cocaine with intent to distribute it. No claim has

been made that the Defendant was incompetent to proceed at the time he was charged.

Less than three months after he was charged, however, on August 25, 2002, the Defendant was involved in an automobile accident in which all agree he suffered very serious brain injuries. Dr. Bondy testified at the competency hearing, for example, that almost forty percent of those suffering initial injuries of this severity <u>die</u> from them and that a portion of the Defendant's brain--although he could not state a specific percentage--"was left on the windshield."

The Court has continued this case many times to allow for the various evaluations and has in the interim received four expert reports. Three have concluded that the Defendant is incompetent to proceed, including the first report received from the Government's experts at FCI Butner. The second report from Butner concludes to the contrary that the Defendant has since been "restored to competency."

The first evaluation received by the Court was that of Dr. Stephen B. Bondy, a Charlotte-based psychologist who has testified in the past in state and federal court for both the prosecution and defense (although a majority of the time for the defense). The Government, represented by AUSA Scott Broyles, stipulated that Dr. Bondy was qualified to testify as an expert. Dr. Bondy noted in his initial report, dated January 15, 2003, that Mickey Deshaun

Smith (the Defendant) "appeared to be rather sleepy and disheveled," "was unsure as to the purpose of the meeting," "was unable to recall his attorney's name," "was not able to state the date, or the city," and that "[i]n each case he deferred to his sister" (with whom he has lived since the accident).

After conducting interviews and various tests and reviewing his medical records, Dr. Bondy concluded that the Defendant "has severe amnesia about much of his life," "is not oriented as to time, place or circumstance," and most significantly, that "he is unable to participate effectively in his defense." In other words, Dr. Bondy's initial conclusion--which agreed with the Government experts' initial conclusion--was that the Defendant was <u>not</u> competent to proceed.

On the basis of this report, the Government moved to have the Defendant evaluated in custody (at a federal facility) to determine his competency. The Government's motion was granted on September 18, 2003, and the evaluation was thereafter conducted at FCI Butner.

By cover letter dated April 30, 2004, Warden A. F. Beeler transmitted the "Forensic Evaluation" report (signed April 26, 2004), reporting that the evaluations had concluded that "Mr. Smith <u>is</u> suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is <u>unable</u> to understand the nature and consequences of the proceedings filed against him or

3

assist properly in is own defense" (emphasis added).  However, as Warden Beeler also noted, the evaluators concluded that there were "[s]ome signs of subjective improvement" and that the Defendant was "likely to benefit from further cognitive rehabilitation"; accordingly, the request was made--and granted by the Court--for "an additional 120-day period for competency restoration, pursuant to Title 18, United States Code, Section 4241(d)."

The initial report from FCI Butner began by noting the information available to the evaluators, and the course followed in the institution (including physical examinations, medications prescribed, observation of the Defendant, review of relevant documents, physical and psychological testing, consults with specialists, and interviews).  Following detailed review of the above (filling thirteen pages of a seventeen-page report), Dr. Joseph Boyle and Dr. Bruce R. Berger, both psychiatrists, concluded that "Mr. Smith is not likely to benefit from cognitive rehabilitation," that "Mr. Smith suffers from cognitive problems resulting from traumatic brain injury," and most importantly, that "Mr. Smith suffers from a mental disease rendering him mentally incompetent to the extent that he is unable to understand the nature and consequence of the proceedings against him or to assist properly in his defense."  "Therefore," the Government's first report concluded, "we view him as incompetent to stand trial" (emphasis added).

4

As noted, the first report from FCI Butner also recommended that the Defendant be returned for an additional period of 120 days to determine whether he could be restored to mental competency, a course which was ordered by the Court, albeit (on defense counsel's request) only after two years had elapsed since the accident. See document #144, allowing the Defendant to live on with his sister until two years elapsed since the accident, noting that this was the period of time at least one of the experts opined was necessary to maximize improvement following this kind of brain injury.

By cover letter dated March 4, 2005, Warden Beeler transmitted the second Forensic Evaluation report. In contrast to the first, Warden Beeler reported that the second group of evaluators (Dr. Berger and Dr. Matthew Soulier, both psychiatrists, and Jill Grant, a psychologist) had determined that the Defendant was competent to proceed, that is, that he had been "restored to competency."

It is frankly difficult to understand the precise basis for the change in conclusion between the first and second evaluations at FCI Butner. To the extent that it is factually supported, the second report notes the Defendant's "active and enthusiastic" participation in a "competency restoration group"; his ability "to identify all seven of the topics for competency"; and his "demonstrated knowledge of the material discussed." However, the second report also concedes that when asked about the current changes the Defendant initially said "I don't remember" and only

5

later was able to minimally answer in an arguably accurate manner ("something about drugs-selling, dealing drugs, or had drugs"). Furthermore, the Defendant continued to assert throughout the second evaluation that "he had no recollection of his offense, and his only knowledge was based on reports given from outside sources. He claimed since his car accident, he cannot remember the events prior, including at the time of the offense" ("Forensic Evaluation" at FCI Butner completed December 8, 2004 and signed March 8, 2005; document #159).

Dr. Stephen Bondy also conducted follow-up interviews after reviewing the second Butner Forensic Evaluation report, and issued a second report himself. Although Dr. Bondy agrees that there has been "a definite improvement in [the Defendant's] ability to communicate and [in] his general physical condition," he does not agree that the Defendant has been restored to competency to stand trial. Specifically, Dr. Bondy notes that the Defendant "has virtually no memory of people or events prior to the accident," "is not sure of what was the highest grade completed in school," does not remember friends from high school when he sees them in public or they visit him at home, is not sure he would recognize his own attorney, did not appear to recognize Dr. Bondy on his last visit, and at best has experienced some improvement in short-term memory only. Thus, while he agrees with some of the Government experts'

6

factual observations, Dr. Bondy concludes in his report dated March 25, 2005:

> In my professional opinion, with a degree of psychological certainty [the Defendant] has such significant cognitive deficits, that he is unable to adequately assist in his defense at this time. Furthermore, there is little probability that he will significantly improve in the future, if at all.

The only witness called at the May 26 hearing was Dr. Stephen Bondy, the Government simply tendering a response to a letter from Assistant United States Attorney Scott Broyles to Dr. Bruce R. Berger, a staff psychiatrist at FCI Butner who had participated in both evaluations of the Defendant. Dr. Bondy testified that he has a Ph.D in Psychology from Michigan State University; that he has been a practicing psychologist since 1971 and has consulted on numerous occasions since that time in criminal cases during his career (consulting on occasion for both the state and federal governments, but a majority of the time for the defense); and that he has spent 5-1/2 to 6-1/2 hours interviewing the Defendant and his closest family since being retained in this case.

Dr. Bondy testified that when he first interviewed the Defendant in December 2002, only months after his automobile accident, he moved in a "very sluggish manner," had a "huge scar or scab on his head," was "obviously in much pain," and had "difficulty in communicating." As noted previously, however, Dr. Bondy conceded that in his most recent contact with the Defendant,

7

he "moves better" and generally seems to have "improved over time." On this much the Government and the Defendant appear to agree.

Improvements notwithstanding, Dr. Bondy--in his written report and oral testimony--continues to believe the Defendant is incompetent to assist in his defense. Essentially, Dr. Bondy agrees with the Government that the Defendant's short-term memory has improved and that he can, in fact, be taught to remember certain facts and points of information. However, Dr. Bondy is equally certain that the Defendant remains incompetent to reason and to make other critical decisions inherent in the constitutionally minimal "assistance in his own defense." Having carefully reviewed the four expert reports, and having considered the evidence and arguments presented at the May 26 competency hearing, the undersigned concurs.

As noted, the Government's only proffer of evidence at the competency hearing was a letter from Dr. Bruce R. Berger, a staff psychiatrist at FCI Butner, responding to two questions posed by Assistant U.S. Attorney Scott Broyles. AUSA Broyles' two questions and Dr. Berger's verbatim answers were:

> **Question 1:** Whether within a reasonable degree of medical/psychological certainty Mr. Smith does not recall the pre-accident events regarding the drug trafficking activities in which he was charged by a grand jury in the Western District of North Carolina, or in the alternative whether he is falsifying his claim of recollection?
>
> **Answer:** It is my opinion Mr. Smith did suffer

8

> a traumatic brain injury, specifically
> Cognitive Disorder Not Otherwise Specified as
> a result of his motor vehicle accident on
> 08/25/02. In all likelihood he did have
> alteration of his ability to recall past
> events. Our evaluation of Mr. Smith strongly
> suggested limited motivation on
> neuropsychological testing regarding his
> memory. His report that he had total amnesia
> for events both before and after his injury is
> atypical. Having said that we can not within
> reasonable medical certainty know precisely
> what he does or does not recall regarding his
> alleged drug trafficking activities. Further
> we can not say to what degree if any he is
> falsifying his lack of memory.
>
> **Question 2:** If Mr. Smith lacks recollection of
> pre-accident drug activities, whether (and
> when) he may, or not, recover his memories
> such events?
>
> **Answer:** Typically, people who suffer a
> traumatic brain injury make most of their
> recovery including recovery of memories within
> the first six months after the event and their
> recovery tends to plateau after approximately
> one year. Since Mr. Smith's accident occurred
> in 2002 it is my opinion that he has
> essentially recovered what memories he can by
> this time.

Letter from Bruce R. Berger, M.D., to Scott Broyles dated April 25, 2005.

On this record, the undersigned finds that the Defendant remains incompetent to assist adequately in his own defense, that is, that the second expert report from FCI Butner concluding that the Defendant has been "restored to competency" is not supported by a preponderance of the evidence.

## II. CONCLUSIONS AND ORDER

Having carefully considered the evidence presented and the arguments of the parties, the undersigned respectfully concludes

9

that the Defendant remains **INCOMPETENT** to proceed, and is not likely to regain competency in the forseeable future.

Accordingly, the Government is **ORDERED** to dismiss or otherwise dispose of the active charges against the Defendant-–who the Government has stipulated and agreed is <u>not</u> a "danger to the community" (which might otherwise justify proceedings to keep an incompetent Defendant in custody).

### III. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised, pursuant to 28 U.S.C. §636(b)(1)(c), that written objections to the proposed findings of fact and conclusions of law contained in this Memorandum and Order must be filed within ten (10) days after its receipt. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court, <u>Snyder</u>, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 93-94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to send copies of this Order to counsel for the parties; <u>and to the Honorable Richard L. Voorhees</u>.

SO ORDERED.

**Signed: May 31, 2005**

*Carl Horn, III*
_____

Carl Horn, III
United States Magistrate Judge